UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO CONTAWE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00222-JD<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 35, 40 |

　　　　Plaintiff Ernesto Contawe alleges that he was illegally detained and interrogated by defendants County of San Mateo, the U.S. Department of Homeland Security, the U.S. Department of Justice and "Does 1-50" for over two days.  He asserts five claims for relief under 42 U.S.C. § 1983, and another five under California state common and statutory law.  Dkt. No. 34.

　　　　The Court previously granted defendant County of San Mateo's motion to dismiss with leave to amend.  Dkt. No. 32.  In response, plaintiff filed an amended complaint, Dkt. No. 34, and now pending before the Court are defendant County of San Mateo's and the federal defendants' separate motions to dismiss plaintiff's amended complaint.  Dkt. Nos. 35, 40.  Because plaintiff's amended complaint still contains the same pleading deficiencies identified in the Court's previous dismissal order, the Court again grants defendants' motions and dismisses the complaint.  Plaintiff will be given one final chance to amend his complaint.

**DISCUSSION**

　　　　As a preliminary matter, the Court observed in its prior order that "[t]he complaint is ambiguous about whether plaintiff is now deceased," and directed that any amended complaint make clear "whether [plaintiff] is currently alive, whether he was alive at the time the initial complaint was filed, and if he is not currently alive, why these claims survive his death."  Dkt. No. 32 at 4 & n.1.  Plaintiff has failed to do even that.  Although his opposition briefs state that he

is "alive and living," *see*, *e.g.*, Dkt. No. 43 at 1 n.1, the amended complaint once again contains allegations that plaintiff "suffered . . . a loss of life" and seeks "funeral and burial expenses." Dkt. No. 34 ¶¶ 55, 65; *see also id*. ¶ 71 (alleging that "[b]y reason of the aforementioned policies and practices of defendants," plaintiff "lost his life").

This ongoing ambiguity about whether plaintiff is dead or alive is completely unacceptable. The Court has already instructed plaintiff's counsel to give a clear answer to this simple question, and for reasons unknown counsel has failed to do that. If the complaint is amended, it must expressly and definitively state in the description of the plaintiff in the "Parties" section whether Contawe is a living, breathing person. If he is not, the amended complaint needs to identify who is prosecuting this case. If counsel again fails to provide this information, the case will be dismissed with prejudice.

On the substance of his claims, too, the allegations in plaintiff's amended complaint remain impermissibly "vague and perfunctory" such that they give defendants "'little idea where to begin' in preparing a response to the complaint." Dkt. No. 32 at 3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)). As before, the factual gravamen of plaintiff's complaint is that he was wrongfully detained for over fifty hours. *See*, *e.g.*, Dkt. No. 34 ¶¶ 39, 48, 102. And, as before, plaintiff provides "just four paragraphs of actual factual allegations" about this alleged incident. *See id*. at 3; Dkt. No. 34 ¶¶ 28-31. In response to the Court's inquiry about "what documents plaintiff was 'forced to sign' when he was being released," Dkt. No. 32 at 3, plaintiff has added the allegation that those (still undescribed) documents "may have purported to absolve defendants of liability." Dkt. No. 34 ¶ 31. But other than that vague addition, the complaint continues to contain just those four paragraphs of actual factual allegations in a form that is virtually unchanged from the prior version of the complaint that the Court dismissed. *Compare* Dkt. No. 1 ¶¶ 30-33 *with* Dkt. No. 34 ¶¶ 28-31.

A major problem here is that plaintiff's counsel fundamentally misunderstands his pleading burden. In opposing the dismissal motions, counsel says that, "[i]n *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court explained that dismissal for failure to state a claim should only be granted under narrow circumstances, and complaints should not be dismissed

unless it appears beyond doubt that the plaintiff cannot prove any facts supporting her claim entitling her to relief." Dkt. No. 43 at 3-4 & Dkt. No. 41 at 3-4. *Conley* is, of course, old law that has been expressly disapproved on this point by the Supreme Court. *See Twombly*, 550 U.S. at 562 ("[T]here is no need to pile up further citations to show that *Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."). The Court again implicitly confirmed in *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009), that "*Twombly* retired the *Conley* no-set-of-facts test."

*Iqbal* is a case that is quite similar in factual and legal context, and plaintiff's counsel is strongly advised to study it. The plaintiff there had claimed that he had been "detained by federal officials" and that "he was deprived of various constitutional protections while in federal custody." 556 U.S. at 666. "To redress the alleged deprivations," plaintiff filed a complaint against numerous federal officials; the respondents in the case before the Supreme Court were John Ashcroft, the former Attorney General of the United States, and Robert Mueller, the Director of the Federal Bureau of Investigation. *Id*. The Court held that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676. The Court concluded that the allegations against respondents did not meet the plausibility standard and were therefore insufficient, at least in part because there were "more likely explanations" for plaintiff's arrest and "discrimination is not a plausible conclusion." *Id*. at 681-82.

*Iqbal* leads to the same result here. As it instructs, the Court "identif[ies] the allegations in the complaint that are not entitled to the assumption of truth." *Id*. at 680. The vast majority of the allegations here fall into this category. For example, plaintiff alleges that "defendants, each of them, had a policy of taking people such as plaintiff into custody and keeping them in custody for an extended period of time without adequately determining their identity." Dkt. No. 34 ¶ 34. And, "defendants seized and arrested plaintiff without probabl[e] cause. Defendants did not use reasonable care to determine plaintiff's true identi[t]y once he was in custody within a reasonable

3

time period. Plaintiff was then held without charges and without cause for nearly three days without any legal justification provided." *Id*. ¶ 36. These allegations are like those in *Iqbal* that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [respondent]' to harsh conditions of confinement 'as a matter of policy solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Iqbal*, 556 U.S. at 680. As in *Iqbal*, it can be said of the similar allegations here that "[i]t is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 681.

The Court turns next to the actual factual allegations in plaintiff's complaint -- the "nub" of plaintiff's complaint -- "to determine if [those allegations] plausibly suggest an entitlement to relief." *Id*. Plaintiff's counsel appears to concede there are few if any of these in the complaint. *See*, *e.g.*, Dkt. No. 41 at 7 ("paragraphs 29-33 allege that the uniformed enforcement personnel detained plaintiff for over 50 hours, interrogated plaintiff about drug trafficking and writing bad checks, failed to provide basic [*sic*], and forced him to complete paperwork purportedly releasing defendants of liability"); *id*. at 9 ("Plaintiff provides six (6) paragraphs of facts known to plaintiff. In short, Mr. Contawe was incarcerated for two nights totaling over 50 hours. Mr. Contawe was at a prison in defendant's county where he was staying in agony due to not receiving proper medical care necessary for a 79 year old recuperating from surgery."). But these allegations are too thin to survive.

As the Supreme Court has stated, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). This is where even the well-pleaded factual allegations in plaintiff's complaint still come up very short. In the Court's judicial experience and common sense, government officers do not suddenly come storming onto airplanes and pull a 79-year-old man out of his seat, taking him

into detention and under interrogation for "drug trafficking and writing bad checks," without so much as giving a superficial reason for such out-of-the-ordinary conduct.

Many questions should at least be anticipated in the complaint: What were the circumstances of the officers coming on board and taking plaintiff with them? What did they tell him about why he needed to come with them? Why does plaintiff say he was interrogated "about being a suspect in drug trafficking and writing bad checks"? What did the officers say to him that made him draw that conclusion? Did they say anything at all about how they believed plaintiff was connected to those activities? What were the circumstances and nature of his detention and interrogation? What kind of room was plaintiff in? Was there a bed? Were other people being detained there, too? How did plaintiff's brother know to come and pick him up? Who called the brother and what did they say to him? Why does plaintiff say he was not provided with sufficient medical care? What care did he need or ask for, and what care was he denied?

This is a non-exhaustive list of the types of pertinent facts plaintiff has left wholly unaddressed. Although plaintiff need not allege evidentiary facts akin to what would be required to defeat summary judgment, he must do much more than he has done here. Without any facts of the types listed above, the complaint as pled has tendered only "naked assertions devoid of further factual enhancement," and as such, it is insufficient. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see also Blantz v. Cal. Dep't of Corr. and Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) (finding that "common sense requires us to reject the allegation that the Chief Medical Officer for the state-wide prison system . . . was personally involved in the decision to terminate [plaintiff] as an independent contractor nurse at Calipatria state prison or to give her a negative job reference," and concluding Rule 8 pleading standard was not met "[i]n light of the threadbare allegations of Hill's personal involvement and the inherent implausibility of the allegations"). Is it possible that plaintiff, at age 79 and while onboard an airplane, was pulled off and detained and interrogated for more than two days for no apparent reason? Possible, yes, but without "further factual enhancement," plaintiff has not "nudged his claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

Plaintiff does not really deny the paucity of his factual allegations, and he in fact acknowledges it and even tries to play it in his favor. He claims that "[t]he failure to recall specifics tends to support that plaintiff is so distraught that he wishes to not relive these events brought on by defendants' unwarranted and malicious conduct." Dkt. No. 43 at 11. He argues that his complaint as alleged is sufficient, and that "[f]urther facts in support of the complaint can be obtained through discovery." *Id*. at 5. But once again, plaintiff has the standard wrong. The notice-pleading standard under Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The burdens of discovery are of particular concern in suits against government officials who may be entitled to assert the defense of qualified immunity. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery,'" and if "a government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed." *Id*. at 685. Consequently, where, as here, plaintiff's "complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." *Id*. at 686.

Plaintiff's complaint asserts ten claims for relief, and because all ten claims rest on the essential factual allegations that the Court has found to be insufficient, the Court dismisses the entire complaint on this basis. Although defendants' motions to dismiss present additional legal arguments specific to various claims, the Court finds it unnecessary to reach those arguments at this time.

**CONCLUSION**

The Court grants defendants' motions and dismisses plaintiff's complaint because it fails to sufficiently plead a claim under Rule 8 of the Federal Rules of Civil Procedure.

Plaintiff will be given one final chance to amend his complaint. To go forward, any amended complaint must move plaintiff's claims across the line from conceivable to plausible, and toward that end, the Court strongly encourages plaintiff to add the kinds of factual allegations described in this order. The Court also again instructs plaintiff that any further amended

complaint must make clear -- in the complaint itself, and not in a motion to dismiss opposition brief -- whether plaintiff is currently alive, whether he was alive at the time the initial complaint was filed, and if he is not currently alive, why these claims survive his death. If plaintiff is indeed alive as he says he is, any references to his loss of life must be removed from the complaint. Any amended complaint must be filed by **January 20, 2016**. No new claims or defendants may be added without the Court's prior approval.

If plaintiff does file an amended complaint and defendants choose once again to move to dismiss it, then the two sets of defendants are requested to file a joint motion to dismiss. The defendants may make a request (after meeting and conferring with plaintiff) if they need more pages or more time to make that happen. Because there are two sets of defendants and ten claims for relief, defendants are also encouraged to summarize their arguments by claim and by defendant in chart form in an attachment to their joint motion to dismiss.

The Court notes that in this round of briefing, there were a number of legal arguments made by defendants to which plaintiff did not respond. The Court advises plaintiff that should there be a third round of motions to dismiss, the Court will deem conceded any arguments of defendants to which plaintiff has not meaningfully responded.

**IT IS SO ORDERED.**

Dated: December 23, 2015

_____
JAMES DONATO
United States District Judge